Good morning. Ben Coleman from Mr. Flores-Montano. The Supreme Court previously held that under the Fourth Amendment, the inspectors did not need reasonable suspicion to dismantle the gas tank in this vehicle. Now, the- Didn't they also, even though they may not have held it, but didn't they make it perfectly clear that 1581 is the operative statute? I agree that they didn't mention 42 at all, and they just simply mentioned 1581. It's our position that given the 2002 amendments to Section 482, which were not mentioned in Flores-Montano, that that statutory construction should be reconsidered, specifically in 2002. It doesn't seem to have anything to do with searches instead of property searches. The amendment does, but it also discusses searches. It also has a sort of a statutory annotation which talks about posting a sign about racial profiling at border facilities, which I believe is a reflection of Congress's intent that Section 482 is the statute that's supposed to govern border searches. If presumably 1581 was the statute governing border searches, presumably they would have put that amendment with the statutory annotation in Section 1581, not Section 482. So it's our position that while the Supreme Court, yes, it did focus solely on Section 1581 and not on Section 482, that this issue should be reconsidered in light of the 2002 amendment. It just, to me, would frankly seem somewhat strange that if Congress really felt that 42 wasn't involved as far as governing border searches and it was only 1581, that they would put this amendment and this annotation in Section 1581. And frankly, what we're asking for, and the Court in the previous case had mentioned it rightfully so, that this is kind of somewhat artificial litigation, because the government's frankly, I think, and they're almost conceding, that they're trying to push, see how far they can push the envelope. I mean, all we're asking for is that border inspectors, under, given this amendment, that which is a subjective inquiry, we're not saying they have to have objective reasonable suspicion, just simply a very mild, low threshold, good faith basis to conduct a search and that they use reasonable means to effectuate whatever good faith basis that they have. That's not really asking for all that much. Obviously, when Congress inserted this particular amendment and that statutory annotation into Section 42, there was a concern about racial profiling and I think it all came out of 9-11, that there was concern that there would be officers that perhaps not acting in good faith or using certain racial profiling tactics would be signaling out certain people. And I think that the request that we're making, which is a very low threshold, is that in order to avoid things like racial profiling, that at least the inspectors have a good faith basis in conducting the search. So that, for an officer not to have to, you know, if an officer were to say, for example, I took down this gas tank because the driver was Mexican, and... Well, wouldn't it be completely appropriate for the agents to say, God, there's lots of drugs getting through this port of entry. We're just going to do some random searching. We're going to search every fifth car. That would be fine, wouldn't it? It would be fine if the search was a routine search, meaning that they, you know, opened up the trunk of the vehicle, they looked in the passenger compartment of the vehicle... No, no, they decide in random search, we're going to really do a search. And so, every fifth truck, we're going to take off the gas tank. Okay. I don't think, I would think that that would not be sufficient, that they would at least have to have a good faith basis to search that particular truck. That when Sandoval Vargas, which was the case that we relied upon, and I acknowledge that there's been confusion since Sandoval Vargas, and cases have gone either way, but Sandoval Vargas talked about if you wanted to refer, let's say, every fifth vehicle for a routine inspection, that that was okay. And I agree with that. But when you're talking about sort of a more intrusive, you know, somewhat non-routine search, such as dismantling the gas tank, which can, you know, cause up to an hour delay, if not more, maybe a little less, depending on, you know, how quickly the mechanic can get there, et cetera. But when you're talking about that type of non-routine search, that simply a random, without any good faith basis... You don't think just bringing the car across the border is sufficient under Flores-Montano and the implications of Sandoval? I think that, I think that bringing the car across the border is sufficient for a routine inspection. Routine. Routine. After Flores-Montano, the case we're arguing. Right. I'm a little reluctant to talk about routine. I understand that. And in the context of the Fourth Amendment and whether reasonable suspicion is required, I agree. The Supreme Court said that we're not going to draw this routine versus non-routine distinction. So does the Fourth Amendment trump the statute in this case, or does the statute add on to the requirements of the Fourth Amendment? It's our position that the statute adds on to the requirements of the Fourth Amendment. And as I said, I really think that this is a modest request. Now, because we're talking about artificial litigation, frankly, I think the government probably in this case could have proved that the officer had a good faith basis to take down the gas tank. But because the government has not relied on that position until now, I think the case should be remanded under Johnson. I think that's the appropriate inquiry for a hearing and for the district court to make a first instance as to whether the inspector had a good faith basis to conduct a search. And if there are no other questions, I would reserve them at any time. Certainly. Good morning for the final time, Your Honors. In this case, first of all, I won't dwell on it, but we're still preserving our waiver claim that this statutory claim isn't even properly before this Court. Isn't this something which is discretionary with us? It's simply a legal issue, and it doesn't require any development of the record. We have cases that say that if we want to, we can go ahead and decide those. I'm aware of those cases, Your Honor. And maybe because I think the government is pretty confident with its position here, we actually do have the record. So if this Court sees fit to hear it, I'll move right on to the merits. But in this case, I think it almost could turn out to be somewhat of an academic argument. I know I put a lot of attention in my brief to arguing why 1581 is the proper border search statute. I still completely agree with that. I think the case law bears that out. This Court, en banc 11 years ago in the Tag-Hizade case, again, my apologies if I'm not pronouncing that right. Although it was an international mail search, expressly held that Section 482 only applies to items that are already inside the interior of the country and that it is not the border search. In fact, in that case, Your Honor, Judge Fletcher authored that, and Judge Reimer was on the panel. You've indicated the dissent of Judge Kilkenny from 17 years prior in the DeVries v. Ackery case. And he had conducted a very thorough legislative history. 1581 should be the right statute here. And that is the only one that the Supreme Court actually mentioned. I'm aware of these 2002 amendments. Maybe their location is a little strange. But that's ambiguous at best. It doesn't talk about vehicle searches. It's specifically limited to passenger searches. I don't think that's enough to overrule or, you know, to negate the en banc holding in Tag-Hizade. And also there was a case, the United States v. Sutter, 340F1022. That was just from last year. That was a vehicle border search at the Mexican border. This Court expressly rejected an argument that 482 applied, and it applied 1581. Now, all that said, though, even if 482 were the right statute here, I still don't think defense gets any traction from that. And why? Sandoval Vargas, which is the main case that has interpreted 482, expressly held at 854F2nd at page 1135 that the statute doesn't impose any greater limit on the border inspectors than does the Constitution. Now, of course, that case was before Flores-Montano. But now that we know that there's been subsequent developments in this area that it is constitutional for border searches like this to happen, I don't believe that he gets any further grounds from Sandoval Vargas. And that kind of goes hand in hand with the argument that he's not presenting and not pressing a constitutional claim anymore. I mean, that was what the litigation was below. I think that's construed as probably conceding the constitutional claim. So if he concedes the constitutional claim in the statute under Sandoval Vargas, because I think Judge Fisher asked that question, does the statute trump the Constitution or vice versa? This court held in Sandoval Vargas that it doesn't go any further than the Constitution does. So for that reason, I don't think that argument will carry. But again, even if it did, even if this court applies it, as defense counsels noted, the requirement he wants under the statute is not objective, reasonable, sufficient, it's something less. It's subjective, good faith basis. This case, the inspector had that. And that's why maybe the factual record is developed enough for this point, because at the primary inspection, the defendant failed to maintain eye contact. His hands were shaking when he handed over his identification. The inspector tapped the gas tank and it sounded solid. I mean, any one of those things by itself is enough to give this lower threshold subjective good faith belief, and that is in the record. So I believe, and I guess the only other thing I would say, and I think Judge Fisher touched on this, defense counsel's argument still hinges somewhat on this routine versus non-routine distinction. I think it's clear after Flores-Montano that such distinctions no longer have any place in vehicle search at the border. And sure, that was a constitutional case, not a statutory. But if the Constitution won't admit of such a distinction and the statute doesn't give any greater protection than the Constitution does, then the statute shouldn't admit of such a distinction either. And unless there are any other questions, I would submit. Okay. Thank you, Mr. Brewer. A couple of quick points. On the waiver issue, I do believe the Court has discretion to consider this argument because it's purely legal. And I believe that the waiver cases cited by the government are different because this is just an argument that's assumed in our claim as opposed to an entirely new claim. The language, which I think is important, of the 2002 amendment that we're relying upon, which obviously Sandoval Vargas didn't have to consider, was not considered in the Sutter decision, is a language that an officer or employee of the United States conducting a search of a person, and admittedly it says person, pursuant to subsection A of this section, shall not be held liable for any civil damages as a result of the search in good faith and use reasonable means while effectuating such search. I think the implication there is that Congress intends that when officers are conducting border searches that they're going to do them in good faith and that they're going to use reasonable means while effectuating the search. That would seem to be the implication of that language. And that's our argument as to why this new statutory language creates this good faith requirement and creates this reasonable means requirement. And this language has not been considered by, it wasn't considered by Supreme Court in Flores-Montano, it wasn't considered by this court in Sutter. It obviously couldn't have been considered by this court in Sandoval Vargas because it didn't exist. And so it's our position that that particular language signifies an implication that good faith and reasonable means are what is required. And then as far as, look, admittedly, based on the declaration that was submitted, you know, this officer, you know, probably in all likelihood he did have a good faith basis and did use reasonable means. But I think under Johnson the appropriate procedure would be a remand for further proceedings. Thank you. All right. Mr. Coleman, thank you. Thank you both for your argument in this matter. And before we continue, the court's going to take a very brief recess. Those are all good arguments, all three of these related cases, interesting issues. Thank you all. Thank you. Thank you. Thank you. My name is Miles. I'm the head of the Sutter. John is the first name. And then the last name. Yep. My last name is Uri Shahid. I'm going to tell you that a new species of animal destroys a new species of
judges: B. Fletcher, Rymer, Fisher